**Rudolph R. ROBINSON, Plaintiff,**

v.

**UNITED STATES AIR FORCE, Defendant.**

**Civ. A. No. 84–2525.**

United States District Court,
District of Columbia.

April 7, 1986.
As Amended April 15, 1986.

David B. Wilkins, Nussbaum, Owen & Webster, Washington, D.C., for plaintiff.

Patricia Carter, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Mr. Rudolph R. Robinson, a black, brings this action against the United States Air Force charging that he was wrongfully discriminated against because of race when he was discharged from the position of Youth Center Director, Bolling Air Force Base. He alleges that his rights conferred under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–1 *et seq.*, were violated when his services were terminated in December of 1981. The trial of this action was heard by the Court without a jury. The various legal memoranda of counsel, the testimony of the several witnesses, the documents, exhibits in evidence and the argument of counsel for the parties have all been fully considered. The Court determines that the plaintiff's Title VII rights were not violated and that he is not entitled to relief.

As required by Rule 52 of the Federal Rules of Civil Procedure, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Rudolph Robinson, a black male, was employed by the United States Air Force at Bolling Air Force Base, Washington, D.C., from January through December, 1981. He was initially employed as the Assistant Youth Center Director, grade PS–7, a nonappropriated fund ("NAF") position. His immediate supervisor was John Cravec who served as Youth Center Director.

Oravec resigned in April, 1981. At that time, he had been at the Center for only a short period of time. Robinson was then appointed Acting Youth Center Director by Joseph Walters, the Director of Recreation Services at Bolling Air Force Base. Both Oravec and Walters are white.

Thereafter, an announcement was posted for the GS–9 Youth Center Director vacancy. Plaintiff expressed an interest in that position to Walters and later submitted an official application—Standard Form 171 ("SF 171"). Candidates for that position were required to meet certain requirements established by the Office of Personnel Management ("OPM") position qualification standards. Walters informed plaintiff that he would request his appointment to the vacancy if he were certified and found qualified by OPM.

The SF 171 which plaintiff had submitted earlier for the Assistant Director position did not state that he had a graduate—M.A.-degree. Additionally, it did not include every position and employment experience that he had in recent years.

The OPM reviewed plaintiff's SF 171 application for the Youth Center Director position and found that he was not qualified because he lacked sufficient experience in the field of recreation. Because of an interest in plaintiff's candidacy, Walters advised Robinson to include his Bolling Youth Center experience on the SF 171. Plaintiff then submitted a revised application which reflected his Youth Center experience and also that he had received a M.A. degree in May 1980 from the University of the District of Columbia, and had earned 12 graduate credit hours in the field of recreation. This information as to the degree was false and was not included on the SF 171 which plaintiff submitted in January 1981, when he first applied for the Assistant Youth Center Director position.

Because of the recently gained work experience at the Youth Center, plaintiff was found qualified by OPM for the Director position. There was no credible testimony and evidence showing that OPM considered the graduate degree in evaluating and determining plaintiff's qualifications. Walters testified that he considered the plaintiff's graduate degree in his name-request to the OPM and that this, together with his recent experience with Youth Center activities, caused him to recommend Robinson

for priority consideration. He opined that a person with plaintiff's education and the degree would perhaps be more mature and experienced than one with a lesser academic background.

Robinson was appointed to the Youth Center Director position on June 29, 1981. At this point, while Walters had not had any direct daily or frequent working relationship with Robinson, he considered him to be a competent supervisor. Between January and June 1981, plaintiff had worked directly under Oravec's supervision; Oravec never commented or reported on the plaintiff's job performance in any manner.

Shortly after plaintiff assumed the Director's office, Walters had more frequent contacts with him and observed a number of performance problems. This resulted in a letter written in mid-August 1981 (Letter of Guidance), pointing out several areas where plaintiff should seek improvement in his daily performance. They included preparation of employee time cards, better procedures for handling of funds, program planning, coordination with other managers, establishing work schedules for his staff, and establishing long range plans with his supervisors. Later, in September, Walters detailed two older and more experienced employees to assist and to work directly with plaintiff in the problem areas.

During this same period and beyond, the plaintiff experienced various problems with the maintenance, security and handling of daily funds taken in by the Youth Center canteen. Robinson was directed to take certain corrective actions. He did not pursue the matter in a timely or satisfactory manner, even after a follow-up review and a directive to take further action. Because of these mounting problems, plaintiff was issued a letter of reprimand for failure to carry out assigned instructions. The plaintiff's performance did not improve and he was advised by Walters that his performance was unacceptable and that he would be given a 60-day period in which to improve or face the possibility of adverse action.

Meanwhile in late September, the personnel office at Bolling discovered in a routine and unrelated audit of its personnel files that there was no documentation in plaintiff's file supporting his degrees. Robinson was requested to furnish the missing documents but supplied only partial documentation. The personnel office then ascertained on its own that he had not secured the M.A. degree. Based on this discovery and other problem areas in his performance, plaintiff was served a notice of proposed removal from federal service. Robinson resisted the personnel action, and after an administrative hearing the charges, as related to the false statement as to the M.A. degree, were sustained. This lawsuit followed after exhaustion of administrative procedures.

The Court has carefully considered and reviewed Mr. Robinson's explanation as to the circumstances under which he listed a graduate degree on the SF-171. Plaintiff claims that the degree was inadvertently listed by the typist who prepared the SF-171, and that he failed to proofread the form after it had been completed by the typist whom he had engaged. The offered explanation is beyond belief; it is rejected. Plaintiff made a deliberate attempt to mislead OPM and other personnel officials. The Court also had full opportunity to hear and assess the credibility of the typist who prepared the application and found it lacking. Her testimony likewise is rejected.

Plaintiff argues that his termination was a mere pretext and that the several criticisms and subsequent adverse action was a disguise by superiors to cover up the fact that he complained about and challenged race segregation and discrimination in youth recreational programs at Bolling. Robinson contended that he was blocked and denied the opportunity to plan and program for the needs of minority youth at Bolling and to establish a link in program and participation between the Youth Center and the immediately adjacent community and neighbors. There is little merit in this contention and support, at best, was weak and minimal.

The testimony showed that the population at Bolling was predominately black; the participants in the Youth Center program reflected that fact. Plaintiff testified that upon becoming Director he attempted to sponsor activities designed specifically for the black youth. This, he claimed, was a change from practices before he was employed. He also charged that the Bolling authorities promoted and approved segregated youth activities at the Base—namely activities at the Center for blacks and at the chapel, located elsewhere on the Base, where the participants were exclusively white or nearly so.

The problem with plaintiff's testimony in this regard was that it included for the greater part only bare allegations, lacking in a factual foundation, analysis, or a minimum showing of the nature of the chapel activities, the length of time that they had existed, if for any period at all, and whether Bolling personnel and funds were budgeted for and involved in the program. In sum, the testimony fell far short to support a finding in plaintiff's favor.

Walters agreed that the majority of the participants at the Youth Center were black as compared with those at the Base chapel. He attributed this to the fact that most of the population was white. He also noted that the activities at the chapel were much more limited than those at the Youth Center; that participation was on a voluntary basis with voluntary personnel in large part, and that the chapel activities were not financed, subsidized or underwritten by the Base.

At the time in question, there were undoubtedly examples and practices of racial discrimination and segregation at Bolling associated with Youth Center activities as well as other programs. However, in the case of the plaintiff Robinson, they were not the underlying reasons for his termination as Youth Director nor were they shown to have impacted on his situation.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this proceeding pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 *et seq.*

In response to the plaintiff's *prima facie* case, the government denied racial discrimination and retaliation and demonstrated that Mr. Robinson's performance as Director was unsatisfactory, did not measure up to requirements, and that he provided false information on his employment application form, both as to prior education and employment experiences. The plaintiff has failed to prove by a preponderance of evidence that the defendant's reasons were a pretext for discrimination. The reasons for the plaintiff's discharge have been supported by a preponderance of compelling and persuasive testimony and evidence, the plaintiff's argument notwithstanding.

 It is not an abuse of discretion to discharge an employee who falsifies an official government document. *Rodriguez v. Seamans,* 463 F.2d 837 (D.C.Cir.1972). Termination of employment is an accepted and recognized disciplinary action when false information is supplied on a federal application form. *Williams v. Boorstin,* 663 F.2d 109, 117–18 (D.C.Cir.1980), *cert. denied,* 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981). Plaintiff was fired from his position at Bolling Air Force Base because he supplied false statements on his SF 171. Air Force regulations provide for removal as an appropriate penalty for falsification, exaggeration or concealment of a material fact in connection with any official document. AFR 40–750, Defendant's Ex. No. 29. Additionally, after his removal it was also discovered that he failed to set forth truthfully and accurately on the SF 171 his prior work experience. These falsifications and inaccuracies supported a strong inference that the misrepresentations on the SF 171 were deliberate. The standards established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) require that a Title VII complainant must be qualified for the position. The nature and extent of the false information supplied by the plaintiff raise serious questions concerning his good judgment, truthfulness and reliability and

basic qualifications as Director of the Youth Center.

. . . . .

The Court appointed David B. Wilkins, Esquire, to represent the plaintiff in this proceeding. Mr. Wilkins responded to the assignment in a commendable manner. The pleadings, legal memoranda and trial presentation on behalf of his client were thorough and complete. The plaintiff was well represented.